IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RANDY S. HUGG,

       Plaintiff,

vs.                                                                         1:20-cv-01250-JCH-LF

KILOLO KIJAKAZI,[1] Acting Commissioner
of the Social Security Administration,

       Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on plaintiff Randy S. Hugg's Motion to Reverse and Remand and Memorandum Brief (Doc. 20), filed on August 2, 2021. Mr. Hugg's motion was fully briefed on November 17, 2021. *See* Docs. 26, 29, 30. Pursuant to 28 U.S.C. § 636(b)(1)(B) and (b)(3), the Honorable Senior District Judge Judith C. Herrera referred this case to me "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." Doc. 16. Having meticulously reviewed the record, read the briefing, and being fully advised in the premises, I find that the Administrative Law Judge (ALJ) applied the correct legal standards, and his decision is supported by substantial evidence. I therefore recommend that the Court DENY Mr. Hugg's motion and AFFIRM the Commissioner's decision.

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, and is automatically substituted as the defendant in this action. FED. R. CIV. P. 25(d).

I.  **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

---

[2]  The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 404.981, as it is in this case.

## II. Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

### III.     Background and Procedural History

Mr. Hugg is a 61-year-old man, with two years of college education, who lives with his wife near Aztec, New Mexico.  AR 15, 156, 193, 247, 339, 827.[4]  Mr. Hugg has worked as a trim carpenter, night stocker, and a chocolate maker.  AR 16, 17, 25, 28, 177–78, 194, 204–11.  Mr. Hugg filed an application for Disability Insurance Benefits ("DIB") on September 27, 2018,[5] alleging disability since November 7, 2011, because of degenerative disc disease in his back and neck, prostate cancer, depression, arthritis, nerve damage in his arms and legs, limited mobility, failing eyesight, diabetes, acid reflux, and a sleep disorder.  AR 156–57, 192.  The Social Security Administration ("SSA") denied his claim initially and on reconsideration.  AR 38–59, 85–91, 96.  Mr. Hugg requested a hearing before an ALJ.  AR 102–03.  On April 29, 2020, ALJ Stephen Gontis held a hearing.  AR 12–35.  The ALJ issued his unfavorable decision on May 13, 2020.  AR 60–76.

The ALJ found that Mr. Hugg met the insured status requirements of the Social Security Act through June 30, 2015.  AR 65.  At step one, the ALJ found that Mr. Hugg had not engaged in substantial, gainful activity since November 7, 2011, his alleged onset date.  *Id*.  At step two, the ALJ found that Mr. Hugg's lumbar spine degenerative disc disease and chronic pain syndrome were severe impairments.  *Id*.  At step three, the ALJ found that none of Mr. Hugg's impairments, alone or in combination, met or medically equaled a Listing.  AR 66.  Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Mr. Hugg's RFC.  AR 66–69.  The ALJ found that through the date last insured, Mr. Hugg had the RFC to

---

[4] Document 11 is the sealed Administrative Record ("AR").  When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

[5] Mr. Hugg's application is dated December 14, 2018, but the body of the application notes it was completed on September 27, 2018.  AR 156.

> perform medium work as defined in 20 CFR 404.1567(c) except the following: he is able to lift and carry fifty (50) pounds occasionally and twenty-five (25) pounds frequently. He is also able to sit, stand, and walk for six (6) hours in an eight (8) hour workday. He is also able to push and pull as much weight as he can lift and carry. He is able to frequently climb stairs, ramps, ladders, ropes, or scaffolds. He can frequently balance, stoop, kneel, crouch, and crawl.

AR 66–67.

At step four, the ALJ concluded that through the date last insured, Mr. Hugg was capable of performing his past relevant work as a trim carpenter. AR 69. Alternatively, at step five, the ALJ found that Mr. Hugg was able to perform jobs that existed in sufficient numbers in the national economy, including laundry worker, industrial cleaner, and dietary aide. AR 70–71. The ALJ thus found Mr. Hugg not disabled from November 7, 2011, the alleged onset date, through June 30, 2015, the date last insured. AR 71.

Mr. Hugg requested that the Appeals Council review the ALJ's unfavorable decision. AR 153–55. Mr. Hugg submitted additional evidence to the Appeals Council. AR 1–5. On September 28, 2020, the Appeals Council denied the request for review. AR 77–82. Mr. Hugg timely filed his appeal to this Court on December 2, 2020. Doc. 1.[6]

### IV.   Mr. Hugg's Claims

Mr. Hugg raises two main arguments for reversing and remanding this case. First, Mr. Hugg contends that the ALJ erred by failing to consider or discuss his chronic pain syndrome in his RFC and "credibility" assessment. Second, Mr. Hugg contends that the ALJ failed to follow the requirements of Social Security Ruling ("SSR")18-01p and therefore failed to consider significantly probative evidence that the ALJ rejected with regard to Mr. Hugg's chronic neck pain. Neither of Mr. Hugg's arguments has merit.

---

[6] A claimant has 60 days to file an appeal. The 60 days begins running five days after the decision is mailed. 20 C.F.R. § 404.981; *see also* AR 78.

V.   Analysis

A.   The Relevant Time Period

As an initial matter, the Court notes that the ALJ's decision is based on a limited time period.  In DIB cases, such as this one, the relevant time period is from the alleged onset date through the date the claimant was last insured.  *Hendron v. Colvin*, 767 F.3d 951, 953 (10th Cir. 2014) (holding that when determining "whether [the claimant] was under a disability as defined in the Social Security Act," the "[r]elevant [t]ime [p]eriod" is from the claimant's alleged onset date though the date the claimant was last insured for disability benefits); *see also* 20 C.F.R. § 404.131(a) ("To establish a period of disability, you must have disability insured status in the quarter in which you become disabled or in a later quarter in which you are disabled."); *Potter v. Sec'y of Health & Human Servs.,* 905 F.2d 1346, 1348–49 (10th Cir. 1990) ("the relevant analysis is whether the claimant was actually *disabled* prior to the expiration of [his or her] insured status") (emphasis in original).

Mr. Hugg's alleged onset date is November 7, 2011.  AR 156, 166, 188.  Mr. Hugg's date last insured ("DLI") was June 30, 2015.  AR 19, 166, 188.  Thus, the relevant time period is between November 7, 2011, and June 30, 2015.  Mr. Hugg does not dispute that this is the relevant time period.

B.   The ALJ Properly Evaluated Mr. Hugg's RFC.

Mr. Hugg contends that the ALJ committed reversible error by "failing to consider his chronic pain syndrome during the RFC and credibility assessments."  Doc. 20 at 10–13; Doc. 29 at 3–5.  He complains that the ALJ never mentioned Mr. Hugg's chronic pain syndrome during

the RFC or credibility assessments.[7] Doc. 20 at 12.  Mr. Hugg argues that the ALJ committed reversible error by failing to account for his chronic pain syndrome, either by including limitations in his RFC, or by explaining why such limitations were unnecessary.  *Id*.  I do not agree that the ALJ failed to discuss Mr. Hugg's chronic pain syndrome; the ALJ adequately explained why he did not include specific limitations in Mr. Hugg's RFC with regard to pain.

An ALJ must evaluate a claimant's physical RFC.  *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996).  A disability determination must include consideration of all of the individual's symptoms, including pain.  SSR 16-3p, 2017 WL 5180304, at *2.  The Commissioner will not find an individual is disabled based on alleged symptoms alone.  *Id*. at *4.  When evaluating a disability claimant's complaints of disabling pain, an ALJ must consider and determine:

> (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a "loose nexus"); and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling.

*Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166−67 (10th Cir. 2012) (citing *Luna v. Bowen*, 834 F.2d 161, 163–64 (10th Cir. 1987)).[8]

---

[7] Although he references a "credibility assessment," Mr. Hugg acknowledges that the Social Security Administration has instructed ALJs to no longer make a credibility assessment.  Doc.20 at 1 n.1.

[8] Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence.  *See, e.g.*, *Paulek v. Colvin*, 662 F. App'x. 588, 593−94 (10th Cir. 2016) (unpublished) (finding SSR 16-3p "comports" with *Luna*); *Brownrigg v. Berryhill*, 688 F. App'x 542, 545−46 (10th Cir. 2017) (unpublished) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*).  Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p. *See Brownrigg*, 688 F. App'x at 545−46; *see also* SSP 16-3p, 2016 WL 1119029, at *6 ("we will evaluate whether the [claimant's] statements [about the intensity, persistence, and limiting effects of pain] are consistent with objective medical evidence and the other evidence").

The ALJ found that through the date last insured, Mr. Hugg had a medically determinable impairment and that that impairment could reasonably be expected to cause the alleged symptoms. AR 67. Mr. Hugg does not challenge these findings. The ALJ further found that Mr. Hugg's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.*

In considering the intensity, persistence, and limiting effects of a claimant's symptoms, the ALJ must examine the entire case record and determine whether the claimant's statements about the intensity, persistence, and limiting effects of these symptoms are consistent with the medical signs and laboratory findings in the record. SSR 16-3p, 2017 WL 5180304, at *4, *5. In examining whether a claimant's statements are consistent, the ALJ will consider a number of factors, including:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *7–*8. The ALJ is not required to make a "'formulistic factor-by-factor' recitation of the evidence." *Keyes-Zachary*, 695 F.3d at 1167. An ALJ must, however, provide the specific

evidence he or she relies on in evaluating whether the claimant's allegations of symptoms are consistent with the record as a whole. *Id*. Here, the ALJ considered the relevant factors and provided the evidence he relied on in determining that Mr. Hugg's pain symptoms were not consistent with the medical records during the relevant time period.[9]

During the hearing, Mr. Hugg stated that he experienced "chronic spinal pain," lower extremity dysfunction, neurological deficits in his spine and extremities, and sleeping disturbances. AR 67. In his decision, the ALJ reviewed the medical records for the relevant time period—between November 7, 2011, through June 30, 2015—and found that they were not consistent with Mr. Hugg's description of his symptoms or limitations. AR 67. The ALJ described when Mr. Hugg "sought emergency room services after he strained his lower back lifting groceries" in August of 2012 and the findings of MRI scans of his lumbar spine. AR 67–68. The ALJ explained that "[d]espite these findings the claimant's condition improved with conservative treatments and medication and the record does not show that he required on-going intensive pain therapies, assistive devices, lumbar surgeries, or orthopedic referrals, strongly suggesting his condition improved after this spinal strain." AR 68. The ALJ observed that shortly after visiting the emergency room, Mr. Hugg underwent nerve block injections in

---

[9] Mr. Hugg criticizes the Commissioner for suggesting "that chronic spinal pain is synonymous with chronic pain syndrome," and that this suggestion is a post hoc rationalization that the Court should reject. Doc. 29 at 3. Chronic pain is generally characterized by pain that lasts months or years and can appear in different parts of the body, including the back and the neck. *See* https://my.clevelandclinic.org/health/diseases/4798-chronic-pain (last visited Apr. 5, 2022). Mr. Hugg does not cite the Court to any evidence that he suffered from chronic pain other than pain in his spine. Mr. Hugg's argument that the Commissioner's use of the phrase "chronic spinal pain" is a post hoc rationalization is without merit. The ALJ adequately addressed Mr. Hugg's complaints of pain in assessing his RFC.

September of 2012 and was prescribed strong pain medications. *Id.*[10] The ALJ noted that by October of 2012, Mr. Hugg reported that the injections had "tremendously" improved his pain control. *Id.*

The ALJ explained that a couple of years later, in May of 2014, despite his complaints of lower back pain, Mr. Hugg reported that he functioned "well" overall. *Id.* Additionally, "[t]he results of the in-office examination did not reveal significant physical deficits and he did not describe medication side effects." *Id.* The ALJ pointed out that the May 2014 record "noted that the prior steroid injection provided 'much improvement' to his condition." *Id.* The ALJ also discussed that, in September 2014, Mr. Hugg reported that he stayed active, and his lower back pain was tolerable during the day but increased at night. AR 68.[11] The ALJ discussed a January 2015 examination where Mr. Hugg reported that when he consistently maintained his medication program, it improved his quality of life. *Id.* Physical examinations at that time were normal.

---

[10] The ALJ cites to "Exhibit 1F, pg. 60" (AR 338) to support his assertion regarding the strong pain medications. *See* AR 68. Page 60 of Exhibit 1F is a "Pain Management and YAG Time Out Checklist" and does not indicate what medications Mr. Hugg was prescribed following the nerve block injections. AR 338. Page 59, on the other hand, is a copy of a prescription for oxycodone dated September 10, 2012, which is the same date as the nerve block procedure. *See* AR 337. The Court presumes that the citation to "Exhibit 1F, pg. 60" is a typographical error and the citation should have been to Exhibit 1F, pg. 59 (AR 337).

[11] In the discussion of 2014, the ALJ describes a visit Mr. Hugg attended with his primary care physician in "July 2014" that is actually a visit on July 14, 2015. *See* AR 65 (citing Exhibit 13F, pg. 35(AR 891)). Because July 14, 2015, is two weeks after the relevant time period, it probably should not have been included in the ALJ's discussion of the RFC. While this particular doctor's visit may not have been relevant, Mr. Hugg does not raise this as an error. Further, the ALJ's decision is not compromised by noting the July 14, 2015 visit. The Court can eliminate the discussion of the July 2015 visit and still follow the ALJ's reasoning to conclude that the ALJ did not commit legal error, and that his decision is supported by substantial evidence. *See Keyes-Zachary*, 695 F.3d at1166 ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. In conducting our review, we should, indeed must, exercise common sense. The more comprehensive the ALJ's explanation, the easier our task; but we cannot insist on technical perfection.").

*Id.*[12] The ALJ explained that by July of 2015, Mr. Hugg "reiterated that his pain was stable and he exhibited mostly normal physical abilities, including full muscle strength, intact neurological senses, and he denied lower extremity numbness, further suggesting his condition was not as limiting as described." AR 68 (citing AR 892). Based on this discussion, the ALJ concluded that the medical evidence from November 2011 through June 2015 supported his conclusion that Mr. Hugg was not disabled.

The foregoing discussion in the ALJ's decision demonstrates that the ALJ provided an adequate examination of Mr. Hugg's chronic pain. The ALJ determined that Mr. Hugg's description of the extent of his pain was not consistent with the medical records during the relevant time period. I do not agree that the ALJ "failed to provide a cogent discussion of Mr. Hugg's chronic pain syndrome" when assessing Mr. Hugg's RFC or in determining that his complaints of pain were inconsistent with the medical evidence at step four. The Court should not remand on this basis.

---

[12] In his discussion of the January 2015 office visit, the ALJ stated that Mr. Hugg "added that he slept well, he denied daytime fatigue, and he sought an alternative to his narcotic pain medications (Exhibit 13F, pg. 38 [(AR 894)])." AR 68. There are two errors in this statement. First, the medical record on Exhibit 13F, pg. 38, is from May 19, 2015, not January 2015. *See* AR 893–94. Second, the note indicates that Mr. Hugg has "breakthrough pain and would like to discuss an alternative opiate for better pain management." AR 894. It appears that Mr. Hugg was seeking alternative narcotic pain medication—not *an alternative to* narcotic pain medications, as stated by the ALJ. *Id.* Although the ALJ incorrectly interpreted the facts on Exhibit 13F, pg. 38, Mr. Hugg does not raise this as an error in his briefing. *See generally* Docs. 20, 29. Therefore, the Court will not address whether this mistake of fact is reversible error. Further, if this statement is removed from consideration, the Court still can follow the adjudicator's reasoning and can determine that the correct legal standards have been applied and that his decision is supported by substantial evidence. *See Keyes-Zachary*, 695 F.3d at 1166.

    C.  <u>The ALJ Did Not Commit Reversible Error by Failing to Determine Mr. Hugg's Onset Date Pursuant to SSR 18-01p</u>.

Mr. Hugg contends that the ALJ was required to consider probative evidence that he rejected with regard to Mr. Hugg's onset date in accordance with SSR 18-01p. Doc. 20 at 2, 13–15; Doc 29 at 5–7. Specifically, Mr. Hugg argues that the ALJ ignored evidence of his cervicalgia, and the degenerative nature of his neck impairments. Doc. 20 at 14. However, SSR 18-01p does not apply in this case because the ALJ found that Mr. Hugg was not disabled.

SSR 18-01p rescinded and replaced SSR 83-20 to clarify "how we determine the EOD [established onset date] in disability claims under titles II and XVI of the Social Security Act." SSR 18-01p, 2018 WL 4945639 (Oct. 2, 2018), *1. The SSR explains:

> If we find that a claimant meets the statutory definition of disability and meets the applicable non-medical requirements during the period covered by his or her application, we then determine the claimant's EOD. Generally, the EOD is the earliest date that the claimant meets both the definition of disability and the non-medical requirements for entitlement to benefits under title II of the Act or eligibility for SSI payments under title XVI of the Act during the period covered by his or her application.

SSR 18-01p, 2018 WL 4945639, *2. A key component of whether the ALJ will need to determine the EOD is that "a claimant meets the statutory definition of disability." *Id*. In this case, the ALJ determined that Mr. Hugg "was not under a disability, as defined in the Social Security Act at any time from November 7, 2011, the alleged onset date, through June 30, 2015, the date last insured." AR 71. Because the ALJ found that Mr. Hugg did not meet the statutory definition of disability, the ALJ was not obligated to apply SSR 18-01p to determine the EOD.

In support of his argument, Mr. Hugg cites *Blea v. Barnhart*, 466 F.3d 903 (10th Cir. 2006). Doc. 29 at 5. In *Blea* the claimant was "found to be disabled and entitled to supplemental security income as of March 1, 2002." 466 F.3d at 906. Nonetheless, the Commissioner denied Blea's claim for disability insurance benefits because she determined that his impairments were

not disabling prior to the date last insured. *Id*. Following a hearing, the ALJ determined that Blea had not been disabled as of his date last insured. *Id*. The ALJ failed, however, to determine the exact onset date. *Id*. at 907. The critical difference between *Blea* and this case is that in *Blea*, "[i]t is not disputed that Mr. Blea is currently disabled under the Act. What is in dispute is when Mr. Blea became disabled." *Id*. at 908–09. In this case, the Commissioner did not determine that Mr. Hugg is disabled. The issue, therefore, is not *when* Mr. Hugg became disabled but *whether* he is disabled at all. SSR 18-01p does not apply because there is no need to determine an exact onset date of disability if the Commissioner has not determined that Mr. Hugg is, in fact, disabled. *Garcia v. Comm'r, SSA*, 817 F. App'x 640, 645–06 (10th Cir. 2020) (unpublished) ("the need to determine an onset date is relevant only when a claimant has been found disabled").[13] Because SSR 18-01p does not apply to the claims in this case, the ALJ did not commit reversible error by failing to apply SSR 18-01p.

Finally, Mr. Hugg argues that "[i]n determining that Mr. Hugg's cervicalgia (chronic neck pain) did not arise until after the June 30, 2015 DLI, the ALJ relied exclusively on medical records that supported this conclusion while ignoring medical records, Mr. Hugg's testimony and the chronic degenerative nature of the impairments, which contradicted the ALJ's conclusion." Doc. 20 at 14. Specifically, Mr. Hugg contends that the ALJ ignored that 1) on September 18, 2014, Mr. Hugg complained of neck pain and was diagnosed with cervicalgia;[14] 2) on September

---

[13] Mr. Hugg also cites *Kimes v. Comm'r, SSA*, 817 F. App'x 654 (10th Cir. 2020) (unpublished) in support of his argument of the applicability of SSR 18-01p. Doc. 29 at 5. *Kimes* is not on point. In providing instructions to the ALJ on remand, the *Kimes* court cites *Blea* and instructs the ALJ to carefully consider the testimony of lay witnesses in determining the RFC. *Kimes*, 817 F. App'x at 659. The Tenth Circuit does not apply SSR 18-01p to Kimes' claims as Mr. Hugg asks the Court to do in this case.

[14] Cervicalgia is the medical term for generalized neck pain that can have many different causes "including muscle strain, repetitive stress, pinched nerves, whiplash, arthritis, an overloaded

15, 2016, Mr. Hugg reported to Dr. Jones that his neck pain began "approximately a year ago without any specific traumatic event;" 3) cervical-spine myelopathy[15] does not arise suddenly but is a progressively degenerative impairment that develops over time; and 4) Mr. Hugg testified that problems with his neck began while he was working at Walmart in 2015, before the DLI. *Id*. at 14–15; Doc. 29 at 6.  Mr. Hugg's argument is without merit.

An ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).  "Evidence outside the relevant time period may be considered to the extent that it assists the ALJ in determining disability during the relevant time period." *Overstreet v. Astrue*, 2012 WL 996608, at *9 (N.D. Okla. Mar. 23, 2012) (unpublished) (*citing Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004)); *Pyland v. Apfel*, 149 F3d 873, 877 (8th Cir. 1998) ("Evidence of a disability subsequent to the expiration of one's insured status can be relevant . . . in helping to elucidate a medical condition during the time for which benefits might be rewarded."). Evidence outside of the relevant time period, however, is not dispositive.  A finding of disability based solely upon evidence outside the relevant time period "would be contrary to the Social Security Act, 42 U.S.C. §§ 416(i), 423(c), which requires proof of disability during the time for which it is claimed." *Pyland*, 149 F.3d at 878.

---

backpack, and poor posture." https://www.hopkinsallchildrens.org/Patients-Families/Health-Library/HealthDocNew/A-to-Z-Cervicalgia (last visited Apr. 25,2022).

[15] "Cervical myelopathy results from compression of the spinal cord in the neck (cervical area of the spine).  Symptoms of cervical myelopathy may include problems with fine motor skills, pain or stiffness in the neck, loss of balance, and trouble walking.  MRI scans are the preferred diagnostic method for cervical myelopathy, but other methods can also be used to help rule out other conditions.  Cervical myelopathy is best treated with spine decompression surgery." https://www.hopkinsmedicine.org/health/conditions-and-diseases/cervical-myelopathy (last visited Apr. 25, 2022).

In this case, the record evidence supports the ALJ's determination that Mr. Hugg did not "describe or exhibit severe functional limitations" because of his neck pain during the relevant time period. AR 66. First, although Mr. Hugg was diagnosed with cervicalgia in September of 2014, he does not direct the Court to any evidence that his neck pain caused any functional limitations during the relevant time period. A diagnosis alone does not automatically establish that Mr. Hugg was disabled. *See Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir. 1988). Second, on September 15, 2016, Mr. Hugg reported to Dr. Jones that his neck pain began "approximately a year ago." AR 912. A year prior to this report was September 15, 2015—well after the DLI of June 30, 2015. Thus, the neck pain reported by Mr. Hugg to Dr. Jones would not assist the ALJ in determining disability during the relevant time period. Third, to the extent Mr. Hugg suffered from cervical-spine myelopathy, he does not direct the Court to any evidence (and the Court could not find any in the record) that he suffered any such impairment within the relevant time period.[16] The ALJ, therefore, did not err in failing to consider that cervical-spine myelopathy is a degenerative impairment. Finally, the record indicates that Mr. Hugg worked at Walmart until January 5, 2015. AR 194. While Mr. Hugg left his job at Walmart prior to the end of the relevant time period, Mr. Hugg does not direct the Court to any medical evidence that demonstrates that his functional limitations were greater than assessed in the RFC. Consequently, the ALJ did not err by failing to consider evidence of Mr. Hugg's neck pain.

## VI. Conclusion

For the reasons stated above, I find the ALJ applied the correct legal standards, and his decision is supported by substantial evidence. I therefore recommend that the Court DENY

---

[16] The Court also did not find any evidence of cervical-spine myelopathy that developed prior to the alleged onset date and could have gotten worse during the relevant time period.

plaintiff Randy S. Hugg's Motion to Reverse and Remand (Doc. 20) and AFFIRM the

Commissioner's decision.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). Written objections must be both timely and specific.** *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma***, 73 F.3d 1057, 1060 (10th Cir. 1996). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. Failure to file timely and specific objections will result in waiver of** *de novo* **review by a district or appellate court.** *Id.* **In other words, if no objections are filed, no appellate review will be allowed.**

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent