IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RANDY S. HUGG,

      Plaintiff,

vs.                                                                          1:20-cv-01250-JCH-LF

KILOLO KIJAKAZI,[1] Acting Commissioner
of the Social Security Administration,

      Defendant.

## ORDER OVERRULING OBJECTIONS AND ADOPTING THE MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on Magistrate Judge Laura Fashing's Proposed Finding and Recommended Disposition ("PFRD"), filed on May 4, 2022. Doc. 32. The Court referred this case to Judge Fashing pursuant to 28 U.S.C. § 636(b)(1)(B) and (b)(3) "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." Doc. 16. The PFRD notified the parties that they must file any written objections within 14 days of service of the PFRD. Doc. 32 at 16. Plaintiff Randy S. Hugg timely filed objections on May 18, 2022. Doc. 33. Acting Commissioner Kilolo Kijakazi filed her reply to Mr. Hugg's objections on June 1, 2022. Doc. 34. Because Mr. Hugg objected to the PFRD, the Court makes "a de novo determination of those portions" of the recommendations to which objections were made. 28 U.S.C. § 636(b)(1)(C). "De novo review requires the district court to consider relevant evidence of record and not merely review the magistrate judge's recommendation." *In re Griego*, 64 F.3d 580, 584

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, and is automatically substituted as the defendant in this action. Fed. R. Civ. P. 25(d).

(10th Cir. 1995). I find that Mr. Hugg's objections are without merit. I therefore overrule Mr. Hugg's objections and adopt the magistrate judge's PFRD.

## I.   Mr. Hugg's Objections.

Mr. Hugg raises three main objections to the magistrate judge's PFRD. First, Mr. Hugg contends that the magistrate judge "failed to make any distinction between lumbar spine degenerative disc disease and chronic pain syndrome contrary to legal authority and the ALJ's own step two findings." Doc. 33 at 3–6. Second, Mr. Hugg objects to the magistrate judge's failure to conduct a harmless error analysis for the ALJ's legal error with regard to his chronic pain syndrome. *Id.* at 6–7. Finally, Mr. Hugg objects to the magistrate judge's failure to apply a harmless error analysis with regard to the ALJ's failure to address "significantly probative and material evidence regarding the onset of Mr. Hugg's chronic neck pain." *Id.* at 7–9. Mr. Hugg's objections are without merit and are overruled.

### A.   The ALJ Adequately Addressed Mr. Hugg's Pain Symptoms.

In his motion, Mr. Hugg argued that the ALJ never mentioned his chronic pain syndrome during the RFC or credibility assessments. Doc. 20 at 12. He argued that the ALJ committed reversible error by failing to account for his chronic pain syndrome either by including limitations in the RFC or by explaining why any such limitations were unnecessary. *Id.* In response, the Commissioner argued that Mr. Hugg's argument "elevates form over substance and does not detract from the substantial evidence supporting the ALJ's findings." Doc. 26 at 6. The Commissioner urged the Court to uphold the ALJ's decision under the deferential substantial evidence standard. *Id.* In his reply, Mr. Hugg contended that the substantial evidence standard did not apply when an ALJ committed legal error. Doc. 29 at 2–3. And, he argued, the ALJ committed legal error by failing to discuss his chronic pain syndrome. *Id.* at 3–5.

In the PFRD, the magistrate judge found that the ALJ had properly evaluated Mr. Hugg's pain symptoms in assessing his RFC.  Doc. 32 at 6–11.  The magistrate judge reasoned that the ALJ considered the *Luna*[2] factors with regard to Mr. Hugg's pain symptoms, and that the "discussion in the ALJ's decision demonstrates that the ALJ provided an adequate examination of Mr. Hugg's chronic pain."  *Id*.  Mr. Hugg objects that, like the ALJ, the magistrate judge "treated Mr. Hugg's chronic pain syndrome as though it was indistinguishable from Mr. Hugg's lumbar degenerative disc disease, despite the ALJ's own step two determination that they were not identical."  Doc. 33 at 6.[3]  In response to Mr. Hugg's objection, the Commissioner points out that the ALJ gave numerous reasons for finding that Mr. Hugg's subjective complaints were inconsistent with the record, and his rationale was supported by substantial evidence.  Doc. 34 at 2.  "Specifically, after considering Plaintiff's subjective symptoms testimony and statements, the ALJ found that the medical records from the relevant period—November 2011 through June 2015—were not consistent with Plaintiff's description of his symptoms or limitations."  *Id*.

Mr. Hugg complains that the ALJ failed to address his chronic pain syndrome separately from the diagnosis of lumbar spine degenerative disc disease, despite finding that it was a separate severe impairment at step two.  Doc. 33 at 2.  He contends that the magistrate judge

---

[2] *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987).

[3] Mr. Hugg further contends that the magistrate judge's findings constituted "a prohibited *post hoc* rationalization, which resolved material disputes within the evidence that the ALJ failed to address."  Doc. 33 at 6.  But he does not develop this argument any further, and it therefore is waived.  *See United States v. Hunter*, 739 F.3d 492, 495 (10th Cir. 2013) (deeming waived an argument inadequately developed in opening brief); *see also United States v. Martinez*, 518 F.3d 763, 768 (10th Cir. 2008) ("But this contention appears only in a fleeting sentence at the conclusion of Mr. Martinez's opening brief, supported by no analysis or citation; without any such development, our precedent instructs us to deem the point waived and leave any such challenge for another day."); *Thompson R2-J Sch. Dist. v. Luke P., ex rel. Jeff P.*, 540 F.3d 1143, 1148 n.3 (10th Cir. 2008) (same); *Rojem v. Gibson*, 245 F.3d 1130, 1141 n.8 (10th Cir. 2001) (same).

"perpetuated this error by ignoring the ALJ's responsibility to consider the effects of chronic pain syndrome on the RFC and symptom assessments," and that the magistrate judge failed "to address the persuasive authority demonstrating that ALJs must explain how they considered chronic pain syndrome." *Id*. at 2–3.  The Commissioner argues that "[r]egardless of whether the ALJ parsed out if Plaintiff's pain was related to his lumbar degenerative disc disease or his chronic pain syndrome, the discussion of the testimony and evidence demonstrates that the ALJ provided an adequate examination of Plaintiff's pain."  Doc. 34 at 3.  I agree with the Commissioner and find that that the magistrate judge correctly found that the ALJ adequately addressed Mr. Hugg's chronic pain in accordance with the regulations.  *See* Doc. 32 at 6–11.

Mr. Hugg does not object to the magistrate judge's finding that the ALJ adequately addressed his pain symptoms.  Instead, he complains that the chronic pain syndrome should have been addressed separately from the analysis of the pain resulting from his lumbosacral degenerative disc disease.  Doc. 33 at 2.  He cites *Martinez v. Kijakazi*, 2022 WL 214539 (D.N.M. Jan. 25, 2022) (report and recommendation) as support for the proposition that an ALJ must address chronic pain syndrome separately from the underlying impairment.  *Id*. at 5.  In *Martinez*, the ALJ expressly considered subjective symptom evidence concerning the claimant's underlying impairment, neurofibromatosis, but did not specifically consider the claimant's chronic pain syndrome.  2022 WL 214539, at *5–6.  The court in *Martinez* explained that

> while some records and medical opinions suggest that Plaintiff's chronic pain may be at least somewhat distinguishable from her neurofibromatosis . . . , other records indicate that her providers treated these diagnoses as addressing a single condition . . . .  In short, the medical record is ambiguous as to whether Plaintiff's chronic pain was a pain-producing impairment distinct and apart from her neurofibromatosis impairment.

2022 WL 214539, at *5.  The court ultimately determined that remand was necessary for the ALJ to resolve the ambiguity.  *Id*. at *6.  While the magistrate judge in *Martinez* found that there were

compelling facts that merited remand, here the ALJ addressed all of Mr. Hugg's pain symptoms and remand is unwarranted.

I agree with the Commissioner that Mr. Hugg's argument seeks to elevate form over substance. *See* Doc. 26 at 6. Mr. Hugg does not point to evidence in the record showing that the ALJ failed to address his pain symptoms specifically caused by chronic pain syndrome as opposed to his back pain. Mr. Hugg does not explain what more the ALJ could have done to address symptoms from his chronic pain syndrome beyond the analysis the ALJ performed. Remand, therefore, "would serve no other purpose than to needlessly prolong a protracted course of proceedings." *Wall v. Astrue*, 561 F.3d 1048, 1069 (10th Cir. 2009) (noting that ALJ's decisions must be read as a whole to prevent a remand that "would serve no other purpose than to needlessly prolong a protracted course of proceedings"). Even if the ALJ in this case did not strictly analyze Mr. Hugg's chronic pain syndrome separately from the lumbosacral degenerative disc disease, the Court concludes that this is a case where a "'decision of less than ideal clarity' should be upheld because 'the agency's path may reasonably be discerned.'" *Richard v. Berryhill*, 2019 WL 3079384 at *2 (quoting *Davis v. Erdmann*, 607 F.2d 917, 919 n.1 (10th Cir. 1979)). "Again, common sense, not technical perfection, is our guide." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012).

Finally, Mr. Hugg objects that the magistrate judge did not address "the persuasive authority demonstrating that ALJs must explain how they considered chronic pain syndrome." Doc. 33 at 3. The authorities cited by Mr. Hugg, however, do not persuade this Court. In the cases cited by Mr. Hugg, courts found fault with the ALJs' failure to discuss the diagnosis of plaintiffs' somatoform disorders. *See Winfrey v. Chater*, 92 F.3d 1017, 1021 (10th Cir. 1996) (finding the ALJ failed to consider plaintiff's diagnosed somatoform disorder); *Scates v. Astrue*,

2012 WL 13080131, *5 (D.N.M. 2012) (unpublished) (ALJ failed to properly consider diagnoses of somatoform disorder and pain disorder in formulating plaintiff's RFC); *Lyubarsky v. Colvin*, 2013 WL 12329140, *8–9 (D.N.M. 2013) (unpublished) (instructing that on remand the ALJ must reassess plaintiff's credibility to consider the possible effect of plaintiff's diagnosis with somatoform disorder); *Sotelo v. Astrue*, 2011 WL 13289791, *6 (D.N.M. 2011) (unpublished) (remanding for the ALJ's failure to explain why he did not consider the effect of plaintiff's diagnosis of somatoform disorder and chronic pain syndrome when assessing plaintiff's credibility); *Gonzales v. Apfel*, 2000 WL 36739736, *4–5 (D.N.M. 2000) (unpublished) (instructing that on remand the ALJ should reconsider his finding of plaintiff's credibility in light of evidence of mental impairments, including a diagnosis of somatic dysfunction).

> Somatoform disorders are characterized by physical complaints for which appropriate medical evaluation fails to reveal a physical pathology, or when such complaints, and any resulting impairment, is grossly in excess of what would be expected from a patient's diagnoses.  A pain disorder is one type of somatoform disorder in which psychological factors play an important role in the onset, severity, exacerbation, or maintenance of pain.

*Wall*, 561 F.3d at 1059 n.18.  "In somatoform disorders, physical symptoms suggest a physical disorder, but there are no demonstrable organic findings and there is strong evidence for link to psychological factors or conflicts."  Roy Abraham Kallivayalil & Varghese P. Punnoose, *Understanding and managing somatoform disorders: Making sense of non-sense*, INDIAN JOURNAL OF PSYCHIATRY (Jan. 2010), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3146190/ (last visited June 27, 2022).  Somatoform and pain disorders are characterized by "psychological factors contributing to perception of pain."  *See, e.g., Wilson v. Astrue*, 602 F.3d 1136, 1143 (10th Cir. 2010) (citing SCHMIDT'S ATTORNEYS' DICTIONARY OF MEDICINE, 640 (1978)); *see also Tolbert v. Chater*, 1997 WL 57091 at *1 n.2 (10th Cir. 1997) (noting that somatoform pain disorder is indicated "where pain is the predominant complaint, the pain is of sufficient severity

to warrant clinical attention, causes significant impairment in social or occupational functions, and is not better accounted for by a mood, anxiety, or psychotic disorder") (citing AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 458-62 (4th Ed. 1994)) ("DSM")).

In this case Mr. Hugg does not point to any evidence that he was diagnosed with a mental somatoform disorder during the relevant time period.  He does not direct the Court to any evidence that he experienced physical complaints for which appropriate medical evaluation failed to reveal a physical pathology.  The cases on which Mr. Hugg relies simply are not relevant to the circumstances in this case.  The ALJ adequately addressed Mr. Hugg's pain symptoms.  I adopt the magistrate judge's recommendations with regard to this issue.

B.   The Court is Not Required to Conduct a "Harmless Error" Analysis When Addressing Mr. Hugg's Chronic Pain Syndrome.

Mr. Hugg's second objection is that the PFRD failed to apply the Tenth Circuit's harmless error standard when addressing chronic pain syndrome.  Doc. 33 at 6–7.  Like the magistrate judge, I find that the ALJ did not err.  Therefore, there is no need to determine whether any error was harmless.

C.   The Court is Not Required to Conduct a "Harmless Error" Analysis with Regard to the ALJ's Analysis of Mr. Hugg's Chronic Neck Pain.

In his motion, Mr. Hugg argued that that the ALJ failed to consider the factors in Social Security Ruling ("SSR") 18-01p.[4]  Doc. 20 at 14.  The Commissioner pointed out in response

---

[4] As the magistrate judge noted in the PFRD (Doc. 32 at 12), SSR 18-01p rescinded and replaced SSR 83-20 to clarify "how we determine the EOD [established onset date] in disability claims under titles II and XVI of the Social Security Act."  SSR 18-01p, 2018 WL 4945639, at *1 (Oct. 2, 2018)  The SSR explains:

that that process described in SSR 18-01p does not apply under these circumstances because Mr.

Hugg did not meet the statutory definition of disability, and the ALJ therefore was not required

to determine Mr. Hugg's established onset date.  In his reply, Mr. Hugg argued that SSR 18-01p

applied.  Doc. 29 at 5–6.  Alternatively, he argued that the ALJ ignored and failed to discuss

significantly probative evidence that he rejected, and that there was an ambiguity that the ALJ

needed to resolve pursuant to *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).  Doc. 29 at

6–7.

The magistrate judge found that SSR 18-01p did not apply in this case.  Doc. 32 at 12–13.

Further, the magistrate judge reviewed the evidence that Mr. Hugg contended the ALJ ignored.

*Id.* at 13–15.  The magistrate judge found that evidence outside of the relevant time period was

not dispositive, and that the record evidence supported the ALJ's determination that Mr. Hugg

did not "describe or exhibit severe functional limitations" because of his neck pain during the

relevant time period.  *Id.* at 14–15.  In his objection, Mr. Hugg argues that the "ALJ's failure to

address significantly probative and material evidence regarding the onset of Mr. Hugg's chronic

neck pain constituted legal error."  Doc. 33 at 7.  Mr. Hugg contends that the magistrate judge

wrongfully applied the "highly deferential substantial evidence standard to affirm the ALJ's

omissions."  *Id*.  Mr. Hugg complains that the PFRD "stated that Mr. Hugg did not show specific

---

If we find that a claimant meets the statutory definition of disability and meets the
applicable non-medical requirements during the period covered by his or her
application, we then determine the claimant's EOD.  Generally, the EOD is the
earliest date that the claimant meets both the definition of disability and the non-
medical requirements for entitlement to benefits under title II of the Act or
eligibility for SSI payments under title XVI of the Act during the period covered
by his or her application.

SSR 18-01p, 2018 WL 4945639, at *2.  A key component of whether the ALJ will need to
determine the EOD is that "a claimant meets the statutory definition of disability."  *Id.*

evidence that his cervicalgia, which undisputedly predated the [date last insured], caused any functional limitations." *Id*. at 8.  I agree with the magistrate judge that the ALJ did not error in addressing Mr. Hugg's cervicalgia, and I overrule his objections.

Mr. Hugg first argues that the magistrate judge's rationale is a *post hoc* rationalization. *Id*.  Again, this argument is undeveloped and therefore waived.  *See supra* at 3 n.3.  Mr. Hugg does not explain how any of the magistrate judge's findings and explanations constitute a *post hoc* rationalization.  *See* Doc. 33 at 8.

Second, Mr. Hugg argues that the ALJ failed to resolve material ambiguities within the record with regard to Mr. Hugg's cervicalgia.  *See* Doc. 33 at 7, 8.   This argument also is undeveloped.  Mr. Hugg does not direct the Court to any material ambiguity in the record that the ALJ needed to resolve.  *See id.*  Consequently, this argument also is waived.

Third, Mr. Hugg objects to the magistrate judge's finding that he did not show specific evidence that his cervicalgia caused any functional limitations.  *Id*. at 8.  The Commissioner raised this issue in its response to Mr. Hugg's motion.  *See* Doc. 26 at 8 ("Plaintiff has not shown that his alleged neck pain caused greater functional limitations that those included in the RFC.").  Mr. Hugg argues in is objections that he was not required to show that functional limitations resulted from his chronic neck pain before the date last insured, only that a medically determinable impairment existed.  Doc. 33 at 8.  He contends that it then was the ALJ's responsibility to consider how his chronic neck pain limited his RFC in combination with his other severe impairments.  *Id*.  Mr. Hugg did not make this argument before the magistrate judge in his reply, *see* Doc. 33, and it therefore is waived.  *Reyes v. Larimer Cnty*., 796 F. App'x 497, 499 (10th Cir. 2019) (unpublished) ("arguments and claims raised for the first time in an

objection to a magistrate judge's report and recommendation are waived") (citing *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996)).

The ALJ found at step two that "[t]he record also makes references to skin cancer, obesity, and cervicalgia.  During numerous in-office visits, the claimant did not describe or exhibit severe functional limitations due to these conditions . . . .  These conditions do not cause more than minimal limitations of the claimant's physical or mental ability to do basic work activities."  Doc. 11-4 at 30.  In Mr. Hugg's briefing before the magistrate judge, he did not raise any issue regarding the ALJ's step two findings or contend that he was not required to show that functional limitations resulted from his chronic neck pain before the date last insured.  Instead, Mr. Hugg argued that the ALJ failed to consider the factors in SSR 18-01p, failed to resolve material ambiguities in the record, and failed to discuss significantly probative evidence that he rejected.  Doc. 20 at 14–15; Doc. 29 at 5–7.  If Mr. Hugg had wanted to challenge the ALJ's finding that he needed to show that his cervicalgia caused functional limitations, he should have done so before the magistrate judge.

Finally, Mr. Hugg asserts that that the ALJ committed legal error when he failed to consider significantly probative and material evidence of his chronic neck pain.  Doc. 33 at 7.  Mr. Hugg's objection to the PFRD is that the magistrate judge failed to apply the harmless error analysis based on the ALJ's legal error.  *See* Doc. 33 at 7–9.  As noted above, the magistrate judge did not find that the ALJ made a legal error based on the evidence during the relevant time period.  Doc. 32 at 13–15.  I agree with the magistrate judge and find that the ALJ did not err.  It therefore is not necessary to conduct a harmless error analysis.  Mr. Hugg's objections are overruled.

## II.    Conclusion

For the reasons stated above, I overrule Mr. Hugg's objections and adopt the magistrate judge's PFRD in its entirety.

IT IS THEREFORE ORDERED that plaintiff Randy S. Hugg's Motion to Reverse and Remand (Doc. 20) is DENIED, and the Commissioner's decision is AFFIRMED.  This case is DISMISSED WITH PREJUDICE.

_____
SENIOR UNITED STATES DISTRICT JUDGE